IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREA RATFIELD, an individual, ANN MARIE KELLY, an individual, BRIAN RAY, an individual, PETER COURTNEY MELL, an individual, JEREMY GERHOLD, an individual, JEROME POWELL, an individual, JESICA THOMPSON, an individual, JOE TEETER, an individual, KATHLEEN SMADES, an individual, MATT DACIER, an individual, MICHAEL DANFORD, an individual, RICHARD SPINDLER, an individual, STEPHEN DUCKER, MD, an individual, WILLIAM GUBA, an individual, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.   23 C 15063 |
| v. | ) ) | |
| UNITED STATES DRUG TESTING LABORATORIES, INC., an Illinois Corporation, DOUGLAS LEWIS, an individual, JOSEPH JONES, an individual, | ) ) ) ) ) ) | Judge Robert W. Gettleman |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Andrea Ratfield and thirteen other individuals have brought a twelve count second amended complaint against United States Drug Testing Laboratories, Inc ("USDTL"), Douglas Lewis, and Joseph Jones, alleging violations of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1962 (a),(b), (c), and (d) against all defendants (Counts I and II); and state law claims for: fraud against USDTL, Lewis and Jones (Counts III, IV, and V); negligent infliction of emotional distress against USDTL, Lewis, and Jones (Counts VI, VII, and VIII); negligence against USDTL, Lewis and Jones (Counts IX, X, and XI); and vicarious liability against USDTL (Count XII).   Federal jurisdiction is based only on the RICO claims.

The lawsuit was originally filed in the Southern District of Florida. After plaintiffs filed a first amended complaint, Judge Dimitrouleas, to whom the case was assigned, dismissed without prejudice plaintiffs' RICO claims for failure to state a claim, and declined to exercise supplemental jurisdiction over the state law claims. Plaintiffs then filed the instant second amended complaint. Judge Dimitrouleas then granted defendants motion under 28 U.S.C. § 1404(a) to transfer venue to this court. Defendants have now moved under Fed. R. Civ. P. 12(b)(6) to dismiss the second amended complaint for failure to state a claim. For the reasons explained below, the court dismisses plaintiffs' RICO claims with prejudice and declines to exercise supplemental jurisdiction over the remaining state law claims.

## BACKGROUND[1]

According to the complaint, USDTL is a for-profit Illinois corporation with its principal place of business in Illinois. It is a business-to-business specimen testing laboratory that does substantial business with more than 50 partners or clients in Florida. Lewis is USDTL's founder, president and scientific director. Jones is USDTL's Chief Operating Officer ("COO") and executive vice president. USDTL has devised a dried blood spot test ("DBS") for the presence of phosphatidyethanol ("Peth"), a biomarker of alcohol consumption. USDTL claims to be Clinical Laboratory Improvement Amendments ("CLIA") certified and compliant. The purpose of CLIA is to ensure the accuracy and reliability of laboratory tests and the public health.

The Centers for Medicare and Medicaid Services ("CMS") regulates all non-research laboratory testing through CLIA. CMS certification depends on whether the laboratory meets

---

1 The background facts are taken from the complaint and are assumed true for purposes of resolving the instant motion. Alam v. Miller Brewing Co., 709 F.3d 662, 665-66 (7th Cir. 2013).

the statutory and regulatory conditions for certification, which requires laboratories to establish and follow written policies and procedures that ensure positive identification and optimum integrity of a patient's specimen through completion of testing and reporting of results.   The second amended complaint alleges that USDTL has not conducted a validation study for its own unique collection process associated with DBS PEth, has not conducted a validation study or analyzed the impact of deviating from the procedures mandated by the laboratory, and has not conducted a validation study to indicate the impact of pre-or-post collection variables. USDTL's DBS PEth methodology is a non-standard, laboratory specific procedure.

The Human Intervention Motivational Study ("HIMS") program is an occupational substance abuse treatment program dedicated to helping all pilots return to the cockpits after they suffer alcohol or other substance abuse.   Part of the program requires participants to submit to frequent drug or alcohol testing.   The HIMS program uses Choice Labs Services, Inc. ("CLS"), a Georgia based company owned by Lisa and Robert Gable, to choose the type of tests to be used to test pilots for alcohol consumption.   CMS directs the pilots to go to certain labs for testing. CLS mails the labs the testing kits, which it receives from USDTL.   Plaintiffs alleges that CLS acts as the "proverbial middleman, and it was entitled to financial reward for such participation."

Plaintiffs are fourteen individuals, mostly pilots but also a doctor and a lawyer, who each underwent at least one DBS PEth test conducted that purportedly resulted in inaccurate, unreliable and/or false positive results.   They allege that each has suffered an adverse employment decision or professional licensing consequences based on the inaccurate test results. They further allege that defendants made numerous misrepresentations about the DBS PEth testing, including misrepresentations about: how use of an ethanol based hand sanitizer could

3

affect results; that DBS PEth tests for abstinence from alcohol or binge drinking; how far back the test can look; the drying time for the specimen cards in the test kits; the use of plastic bags in the test collection; the use of an arbitrary 20ng/mL cutoff level to indicate a positive test result; and that the test has no known false positives.

Plaintiffs allege that through these misrepresentation defendants engaged in a scheme that that misled plaintiffs and employers that required plaintiffs and others to undergo USDTL testing about the veracity, efficacy, reliability, and meaning of positive DBS PEth test results, allowing defendants to financially gain by making substantial revenue, income and profit.

## DISCUSSION

Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Such a motion challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); see Gibson v. City of Chi., 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

Claims involving fraud, including Rico claims based on fraud, are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b). Goren v. New Vision Intern. Inc., 156 F.3d 721, 726 (7th Cir. 1998). Rule 9(b) requires that the plaintiff "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This requires a plaintiff to "describe

4

the who, what, when, where, and how of the fraud." Anchorbank, FSB v. Hofer, 649 F.3d 610, 615 (7th Cir. 2011).

Count I of the complaint alleges RICO violations under 18 U.S.C. §§ 1962(a), (b), and (c). Count II alleges a RICO conspiracy under § 1962(d). Defendants challenge the adequacy of both claims on numerous grounds.

Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." To state a claim under this section, a plaintiff must identify an "enterprise." United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund v. Walgreen Co., 719 F.3d 849, 853 (7th Cir. 2013). The statute defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The definition is to be interpreted broadly, and an "association-in-fact" enterprise need not have any structural features beyond "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle v. United States, 556 U.S. 938, 944, 946 (2009).

As the Seventh Circuit noted in Walgreen, however, "despite the expansive nature of this definition, it is not limitless." 719 F.3d at 853. Section 1962(c) requires a plaintiff to identify a "person" as the defendant, that is distinct from the RICO enterprise. Id. (citing Cedric Kusher Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001) ("[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: 1) a 'person': and 2) an 'enterprise'

5

that is not simply the same 'person' referred to by a different name.)   The 'person' defendant,

must have "conducted or participated in the conduct of the 'enterprise's affairs', not just [its]

own affairs."   Reeves v. Ernst & Young, 507 U.S. 170, 185 (1993).

In their first amended complaint plaintiffs identified each named defendant, USDTL,

Lewis, and Jones as the RICO "persons," and that together they were the RICO "enterprise."

Relying on Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1355 (11th Cir. 2016), Judge Dimitrouleas

noted that in an association-in-fact enterprise a defendant corporation cannot be distinct for

RICO purposes from its own officers, agents, and employees when those individuals are

operating in their official capacities for the corporation.   Therefore, plaintiffs had not pled an

enterprise separate and distinct from the person.

Plaintiffs continue to argue that an enterprise consisting of an association-in-fact of the

named defendants, USDTL, Lewis, and Jones, is sufficient to state a claim.   They argue that

Kushner squarely rejects defendants' theory (and Judge Dimitrouleas' decision) that in an

association-in-fact enterprise a defendant corporation cannot be distinct from its officers when

they are operating in their official capacities for the corporation.   Plaintiffs' interpretation of

Kushner is wrong.

In Kushner, the Court held that where a defendant is a natural person, he is distinct for

RICO purposes from a closely held corporation of which he is the president and sole shareholder.

In Kushner, the plaintiff alleged that boxing promoter Don King conducted the affairs of Don

King Productions through a pattern of racketeering activity.   Noting that a corporation and its

owner are legally separate and distinct entities and that RICO was designed to protect legitimate

enterprises from becoming vehicles through which unlawful activities were committed, the Court

6

had no problem concluding that "[a] corporate employee who conducts the corporation's affairs

through an unlawful RICO pattern of activity uses that corporation as a vehicle, whether he is, or

is not, its sole owner." Kushner 533 U.S. at 165.   In Kushner, however, the corporation was the

enterprise, and the individual was the person.   Id. at 164.   The Court specifically declined to

address the issue present in the instant case, where the claim is that the corporation is a person

and the corporation together with its employees are the enterprise.   Id.   As the Ray court noted,

every circuit that has squarely decided the issue has recognized the distinction.   Ray, 836 F.3d at

1356; See also Fitzgerald v. Chrysler Corp., 116 F.3d 225, 226-28 (7th Cir. 1997).

Consequently, the court concludes that an "enterprise" consisting of an association of defendants

USDTL, Lewis, and Jones is not distinct from the RICO persons.

Obviously recognizing the fault in their argument, in the second amended complaint

plaintiffs have also identified CLS and the Gables as participants in the enterprise.   The

allegations as to CLS and the Gables' participation in the "enterprise" are sparce and conclusory.

Plaintiffs do allege that CLS and the Gables were aware of allegations that defendants' test

produced inaccurate results but continued to direct pilots to laboratories for Peth testing, but

there are no allegations as how CLS was compensated.   For example, it was the HIMS program

that employed CLS to choose the type of test to be used.   According to the second amended

complaint CLS was a "middleman," entitled to financial reward, but there are no allegations as to

how it was rewarded.   Presumably, it was paid by HIMS. There are certainly no allegations to

demonstrate that USDTL and CLS were in anything other than a standard commercial

relationship.   There are no allegations to support a conclusion that the two companies conspired

to form a distinct enterprise.   Nor are there any allegations to plausibly suggest that USDTL and

CLS were conducting the affairs of the alleged enterprise as opposed to their own affairs.   See

Walgreen, 719 F.3d at 854.   The second amended complaint fails to allege that officials from

either company involved themselves in the other, or that profits from the alleged illegal scheme

were "siphoned off" to the alleged enterprise or to individual enterprise members.   Id. at 855.

Indeed, there are no allegations of any communication between CLS and defendants.

Consequently, the court concludes that plaintiffs have failed to allege a RICO enterprise separate

and distinct from the RIC person defendants and have failed to sufficiently plead a RICO claim.[2]

Counts I and II are dismissed.

---

[2] Defendants have raised other attacks on plaintiffs' RICO claims, some of which appear meritorious.   For
example, there are no allegations that plaintiffs, their employers, or HIMS, relied on or were even aware of
defendants' alleged misrepresentations.   Absent such reliance, plaintiffs have not alleged that they were injured by
reason of the alleged racketeering activity.   Ray, 836 F.3d at 1350.

**CONCLUSION**

For the reasons described above, the court grants defendants' motion [67] to dismiss as to counts I and II.   Those counts are dismissed with prejudice.   The court declines to exercise supplemental jurisdiction over the remaining state law counts (III-XII) and dismisses those counts without prejudice.   28 U.S.C. § 1367(c)(3).

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE:   February 15, 2024**